***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Phillips, with modifications. *Page 2 
 *********** MOTIONS
On August 11, 2011, Defendant Excel Payroll Plus, Inc. filed with the Full Commission a motion to strike and to re-open the record. In the discretion of the Full Commission, Defendant Excel Payroll Plus, Inc.'s motions to strike and to re-open the record is denied. On August 11, 2011, Defendant Excel Payroll Plus, Inc. also filed with the Full Commission a motion to dismiss Defendant Sweep Rite, Inc.'s cross appeal as Defendant Sweep Rite, Inc. failed to appeal the Opinion and Award of the Full Commission. Defendant Excell Payroll Plus, Inc.'s motion to dismiss is hereby granted.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
Prior to the hearing before the Deputy Commissioner, the parties stipulated and agreed to the following:
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter to the extent jurisdictional questions are waived.
2. The parties are subject to the Act.
3. All parties have been properly designated, and there is no question as to joinder.
4. Insurance coverage by Hartford Underwriters Insurance Company for Defendant Excel Payroll Plus existed on the alleged date of injury.
5. Plaintiff alleges to have sustained a compensable injury on Monday, August 13, 2007. *Page 3 
6. Plaintiff's average weekly wage and compensation rate, pursuant to N.C. Gen. Stat. § 97-1, et seq., are $200.00 and $134.00, respectively.
7. The medical index attached to the pre-trial agreement reflect Plaintiff's current medical records in this matter and the parties agree to reserve the right to supplement this index should additional medical records become available.
8. The parties agreed that all medical evidence will be obtained by stipulation or deposition following the hearing before the Deputy Commissioner.
9. The parties certify that all documents submitted as exhibits, including relevant medical records, and Industrial Commission forms are to be admitted into evidence.
 ***********
The following documentary evidence was received as:
 STIPULATED EXHIBITS
1. Plaintiff's Medical Records
2. North Carolina Industrial Commission Forms and Pleadings
3. Discovery Responses from Defendant Sweep Rite
4. Discovery Responses from Defendant Excel Payroll Plus
5. Discovery Responses from Plaintiff
6. Check Stub Regarding Payment Made to Plaintiff
 PLAINTIFF'S EXHIBITS
1. List of Plaintiff's Prescriptions
2. Plaintiff's Social Security Disability Documents
 DEFENDANT SWEEP RITE, INC.'S EXHIBITS
1. Employment documentation — Andrew Horton *Page 4 
2. Employment Advertisement
 DEFENDANT EXCEL PAYROLL PLUS, INC.'S EXHIBITS
1. Payroll records of Defendant Sweep Rite, Inc.
 STATE'S EXHIBITS
1. North Carolina Industrial Commission Database Coverage Screen
2. Secretary of State's Records for Sweep Rite, Inc.
 DEPOSITIONS
Jeffrey Albea, M.D., Michael Brown, M.D., Miles Hyman, M.D., William Simons, M.D., William D. Miller, M.D., Suzannah McCuen, M.D., Mark Lawrence, M.D., Mr. Kenneth Cook, L.C.S.W., Susan Marks, L.C.S.W., and Mr. Ted Kazaglis.
 *********** ISSUES
1. Did Plaintiff sustain a compensable injury in the course and scope of her employment on August 13, 2007?
2. What are the compensable consequences of Plaintiff's August 13, 2007 injury by accident?
3. Whether there is an employer/employee relationship between Plaintiff and Defendant, Excel Payroll Plus, Inc.?
4. Whether Plaintiff failed to file her claim against Excel Payroll Plus within the statute of limitations?
5. Whether Plaintiff was an employee only of Sweep Rite and therefore, Sweep Rite has an obligation to provide coverage? *Page 5 
6. Whether there is a valid contractual obligation for Defendant Excel Payroll Plus to provide workers' compensation insurance coverage to Sweep Rite for Plaintiff?
7. Whether Plaintiff sustained a compensable specific traumatic incident on the date alleged?
8. Whether Plaintiff is not entitled to any benefits as she did not inform any employer of an injury within thirty (30) days as required by N.C. Gen. Stat. § 97-22, therefore, prejudicing Defendants?
9. Whether Plaintiff's medical condition subsequent to August 13, 2007, is related to any compensable specific traumatic incident?
10. Whether Plaintiff can show she was disabled as a result of a compensable injury arising out of the course and scope of employment?
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 29 years of age with a date of birth of September 30, 1981. Plaintiff resides in Clyde, North Carolina. Plaintiff has a tenth grade education with a GED certificate. Plaintiff's past work experience includes home health care, bookkeeping, waitressing, and housekeeping.
2. Defendant Sweep Rite, Inc. is a company that cleans parking lots and provides landscaping services for various property management groups, owned by partners Randall James and Charles R. Hess III. *Page 6 
3. Defendant, Excel Payroll Plus, Inc., is an administrative services company owned by Kimberly Bradley Lewis. Excel maintained approximately 80 or 90 client companies in 2007, including Sweep Rite, Inc.
4. On November 21, 2006, Mr. Hess, on behalf of Sweep Rite, Inc. entered into a written contract with Excel Employment Services to obtain workers' compensation coverage for all of Sweep Rite, Inc.'s employees. In early 2007, Excel Employment Services assigned the responsibility for the subject agreement to Defendant Excel Payroll Plus, Inc.
5. Each of Excel's client employers are responsible for the actual hiring, training, supervising, and firing of their employees. When a client employer makes the decision to hire an employee, they provide the new employee with paperwork to complete so that the employee can be added to Excel's roster. Ideally, new employee paperwork is provided, completed and submitted to Excel before the employee actually begins working.
6. The agreement between Sweep Rite, Inc. and Excel Payroll Plus, Inc. describes the duties and rights of Excel and the subscriber, Sweep Rite as follows:
 "IV. Duties and Rights of Excel
 A. Excel Employment Services, Inc., agrees to provide the following services to Subscriber and the employees under Subscriber's supervision.
 . . . (3) Administration and payment of employee worker's compensation insurance from Excel Employment Services Inc.'s Own (sic) accounts.
 . . . B. Excel Employment Services, Inc., shall furnish and keep in full force and effect during the term of the Agreement workers compensation insurance *Page 7 
covering all employees filling Subscriber's job positions under the terms of this Agreement."
 . . . D. Excel Employment Services, Inc., agrees to release, defend, indemnify and hold Subscriber harmless from and all wrongful or negligent acts of Excel Employment Services, Inc., or any failure of Excel Employment Services, Inc., to act in performance of its duties during the term of this Agreement."
 "V. Rights and Duties of Subscriber
 . . . C. Subscriber agrees to maintain records of actual time worked and verify the accuracy of wages and salaries reported to and paid by Excel Employment Services, Inc., during each pay period. . . .
 Subscriber also agrees not to pay wages or salaries, or other forms of direct or indirect compensation, including employee benefits without informing Excel in written communication.
7. In late August 2007, Plaintiff met Ronnie Roland, supervisor for Defendant Sweep Rite, Inc., and Andrew Horton in a Walmart parking lot in Sylva, North Carolina to receive training on the use of the equipment and cleaning the large parking lots, which included instructions on the snow shovel that removed trash from a sweeper to a dumpster. As part of the orientation process in August 2007, Plaintiff and Mr. Horton were each given a packet of materials containing, among other things, an Excel personal data sheet and a W-4 tax form. Mr. Horton and Plaintiff were instructed to complete the paperwork and return it later.
8. Plaintiff was trained to crank the equipment, blow trash out of the parking lots, change trash cans, and shovel debris. Plaintiff began her duties at 9:00 p.m. and completed her night of work at 2 a.m. *Page 8 
9. Mr. Hess testified that he thought Plaintiff was hired "around the date of August 24th" by Mr. Roland and that Plaintiff was an employee of Excel. Plaintiff did not return her completed W-4 tax form or any other paperwork contained in the packet of materials she had been provided to either Excel or Sweep Rite. As a result, Mr. Hess paid Plaintiff $200 for her time by way of a Sweep Rite, Inc. company check. Mr. Hess paid Plaintiff with this company check on August 28, 2007. Mr. Hess testified that he had in the past submitted employee paperwork to Excel after the hiring of employees and after they had begun working for Sweep Rite.
10. Mr. Horton submitted his employment packet to Excel on August 31, 2007. Excel paid Mr. Horton the same day for the week he had just worked. On each of these occasions, Excel considered the individuals hired by Sweep Rite, Inc. to be covered by the agreement between Excel and Sweep Rite, Inc. as of the date the individual first began working for Sweep Rite, regardless of the date the paperwork was submitted to Excel.
11. There are no terms within the agreement between Excel Payroll Plus, Inc. and Sweep Rite, Inc. that precondition Excel's obligations under the contract, including the obligation to provide workers' compensation coverage, to only pay employees upon paperwork being submitted to Excel.
12. According to Ted Kazaglis, an expert in professional employer organizations, the agreement between Sweep Rite and Excel, indicated that the only employees who would receive workers' compensation benefits were those employees who met the requirements of the professional employer organization (Excel) to qualify as assigned employees.
13. Mr. Kazaglis conceded that the agreement in dispute does not define assigned employees and referred to N.C. Gen. Stat. § 58-89A-5(2) which defines an "assigned employee" *Page 9 
as an employee who is performing services for a client company under a contract between a licensee and a client company in which employment responsibilities are shared or allocated. There is nothing contained within this definition that precludes Plaintiff from being considered an "assigned employee" of Excel.
14. Plaintiff began working the next night after training. Plaintiff was working alone and was unable to get a machine working. Plaintiff called her husband to come assist her. While Plaintiff waited for her husband, she emptied the trash cans and blew trash off the parking lots. Plaintiff had completed cleaning the fifth parking lot when she lifted too much with the snow shovel and felt a painful sensation extend from her buttocks down from her legs to her feet.
15. Plaintiff testified that immediately after her injury, she reported it to Mr. Ronnie Rowland, who was the supervisor for Sweep Rite, Inc. Mr. Rowland informed Plaintiff that he needed to report the incident to the owner. Plaintiff testified that she did not know of Defendant Excel, and that it was reasonable that she did not submit written notice of her injury to Excel.
16. Mr. Hess testified that around September 21, 2007, he received a phone call from Plaintiff reporting that she hurt her back while working for Sweep Rite. After receiving Plaintiff's call, Mr. Hess notified Excel of Plaintiff's injury, and advised Excel that Plaintiff's wages had been paid with a Sweep Rite, Inc. company check.
17. Kim Lewis, owner of Excel Payroll Plus, Inc., did not report Plaintiff's accident to Hartford Underwriter's Insurance Company which carried Excel's workers' compensation coverage at the time. Ms. Lewis was "irritated" that Plaintiff's employment paperwork had not been submitted before her accident. Ms. Lewis testified that Mr. Hess had a history of submitting employee paperwork to Excel after the hiring of employees and after they began working for Sweep Rite. However, Ms. Lewis testified that as long as the paperwork was *Page 10 
submitted for an employee, Excel would cover any injury the employee may have had prior to the paperwork being submitted to Excel.
18. Plaintiff's previous medical history included medical treatment with Dr. Michael Brown for mood disorder and insomnia. Plaintiff testified that she also sustained a broken ankle sometime around March 2007 or at least before August 2007, and Dr. Brown placed Plaintiff on crutches with non-weight bearing restrictions. There were no other restrictions on Plaintiff's ability to work following her ankle injury.
19. On August 22, 2007, Plaintiff went to the Haywood Regional Medical Center complaining of acute lower back pain that had persisted for two weeks before worsening. Plaintiff had previously complained of back and neck pain to her family physician, Dr. Michael Brown at Hazelwood Family Medicine, prior to her injury in August 2007. Dr. Brown was not aware of any major difficulties or restrictions from Plaintiff's prior back or neck condition.
20. Plaintiff continued to complain of back and neck pain. Plaintiff explained to Dr. Brown that she had injured her back when she was sweeping and shoveling trash with a sweeper. On August 31, 2007, Dr. Brown ordered an MRI which was subsequently performed on September 10, 2007. The MRI revealed a partial disc desiccation at L1-L2 and L2-L3, mild facet joint hypertrophy with mild neural foraminal narrowing at L3-L4, L4-L5, and L5-S1 and desiccated disc with mild annular bulge and superimposed small central disc protrusion at L5-S1. Dr. Brown referred Plaintiff to a specialist in December 2007.
21. Plaintiff continued to treat with Dr. Brown through January 2009 wherein Plaintiff continued to experience severe back pain. Plaintiff concurrently treated with Dr. Hyman, a pain specialist. During the entire treatment period with Dr. Brown, Plaintiff expressed complaints of hallucinations. During this time period Plaintiff was prescribed Lexapro, Xanax, *Page 11 
Seroquel, Vicodin, Vivelle patch, Klonopin, Percocet, Dilaudid and Risperdal. Dr. Brown's last treatment visit with Plaintiff was February 24, 2010.
22. Dr. Brown's expert medical opinion was that Plaintiff's injury by accident in mid-August 2007, "significantly contributed" to her back problems. Dr. Brown opined that Plaintiff's back pain and mood disorder have caused Plaintiff to miss work since August 2007 and that since June of 2009, Plaintiff would be unable to do anything such as lifting or standing on her feet for extended periods of time. Dr. Brown characterized Plaintiff's back as more chronic and Plaintiff's mood disorder as more episodic.
23. Plaintiff treated with Dr. Jeffrey R. Albea at Mountain Spine on September 17, 2007. The intake sheet of that date also indicated that Plaintiff's severe back pain began in August of 2007. Dr. Albea treated Plaintiff from September 2007 through May 2008. Dr. Albea's medical records noted consistent pain symptoms. Dr. Albea stated that Plaintiff had sufficient degenerative disease with a disk bulge at L5-S1, such that it had potential to become a surgical problem in the future. Dr. Albea was unable to offer an opinion as to whether Plaintiff was unable to work as a result of her back pain.
24. Plaintiff treated with Dr. William Miller, also at Mountain Spine, who diagnosed Plaintiff as having foraminal stenosis resulting in radiculopathy. Dr. Miller administered an injection to Plaintiff's S1 region of her back. Dr. Miller opined that Plaintiff's back problem was a chronic problem and that any twisting motion such as the injury by accident of August 2007 that Plaintiff sustained, would have aggravated Plaintiff's chronic back pain.
25. Plaintiff sought treatment with several medical providers for pre-existing mental problems both before and after her injury of August 2007. Medical records document that Plaintiff was fixated on her medications and requested Xanax and Percoset refills too soon *Page 12 
between the prescription expirations. Medical records document that Plaintiff has used three pharmacies to fill her prescriptions, sometimes at the same time. Plaintiff failed a drug test early in June of 2009 while treating with Dr. Hyman, which caused termination of her treatment at his facility.
26. Plaintiff was hospitalized at Broughton Hospital from October 12, 2007 to October 19, 2007. Medical records from Broughton Hospital document that Plaintiff complained of ruptured discs and back pain.
27. Dr. Suzannah McCuen is a physician who specializes in psychiatry and treated Plaintiff during her October 2007 admission at Broughton Hospital. Dr. McCuen testified that Plaintiff's chronic pain did not make her psychiatric symptoms worse given that her psychiatric presentation was essentially the same in 2000 and 2007. Dr. McCuen tetstified that Plaintiff's whole presentation was colored by Plaintiff's pursuit of controlled substances and that Plaintiff would benefit from a non-narcotic treatment plan. Dr. McCuen diagnosed Plaintiff with Personality Disorder characterized by drama and exaggeration.
28. Plaintiff began counseling sessions with Ken Cook, M.S.W., at the Life Counseling Center, P.A., in Asheville, North Carolina on October 25, 2007. Mr. Cook testified that Plaintiff's back pain exacerbated her mental problems and made her life experience more difficult. He was unable to opine as to how well Plaintiff would be able to perform any job function during a manic phase.
29. Susan Marks, M.S.W., also with the Life Counseling Center, P.A., began working with Plaintiff on December 20, 2007. Plaintiff told Ms. Marks that she had been injured at work, but was not specific on the details. Ms. Marks opined that Plaintiff had pain from her August 2007 injury and that the pain and/or medical complications from Plaintiff's back injury *Page 13 
aggravated, accelerated, exacerbated, or significantly worsened her existing psychological/mental problems. Ms. Marks further opined that Plaintiff's psychological/mental problems affected her ability to work.
30. Dr. William Simons was the attending psychiatrist when Plaintiff was admitted to Park Ridge Mental Hospital from November 28, 2008 to December 8, 2008. Although Plaintiff had been diagnosed with Bipolar Disorder or Schizophrenia at age 11, Dr. Simons offered the opinion that the Bipolar diagnosis was proper for Plaintiff. Dr. Simons noted that Plaintiff had considerable complaints of neck and back pain, and felt that her accident contributed both directly and indirectly to the mental conditions for which he treated her.
31. Dr. Mark Lawrence is a physician specializing in psychiatry. He works at Appalachian Community Service which has treated Plaintiff since September 17, 2004. Dr. Lawrence agreed with Plaintiff's long time diagnosis of Bipolar disorder. Noting increased complaints of pain in 2007 and specific references to her work injury, Dr. Lawrence felt that Plaintiff's accident exacerbated her mental problems and further increased Plaintiff's back pain, thereby decreasing Plaintiff's ability to earn preinjury wages.
32. Based upon a preponderance of the evidence of record, the Full Commission assigns greater weight to the opinions and testimony of Dr. Simons, Dr. Lawrence, Dr. Hyman, and counselors Marks and Cook, concerning their conclusions that Plaintiff's mental health problems were aggravated by the pain resulting from Plaintiff's work injury of August 2007.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 14 
1. On or about August 22, 2007, Plaintiff sustained a compensable injury by accident to her back. N.C. Gen. Stat. § 97-2(6).
2. Pursuant to N.C. Gen. Stat. § 97-22, Plaintiff timely reported the injury to her immediate employer, Sweep Rite, Inc. Plaintiff did not know of Defendant, Excel, and therefore it was reasonable that she did not submit written notice of her injury to Excel. Defendant, Excel, after being notified of Plaintiff's injury by Mr. Hess, intentionally failed to report the injury to its Carrier and therefore did not incur any prejudice as a result of Plaintiff's failure to submit written documentation directly to Excel. Id.
3. An employment relationship existed between Plaintiff and said Defendant-Employers, Sweep Rite, Inc. and Excel Payroll Plus, Inc., at the time of her injury and said Defendant-Employers were insured at that time. N.C. Gen. Stat. § 97-2.
4. As a result of Plaintiff's compensable injury to her back and the resulting chronic pain, Plaintiff has sustained a compensable aggravation and/or exacerbation of her preexisting mental conditions. N.C. Gen. Stat. § 97-2(13).
5. Plaintiff may prove disability in one of four ways: (1) the production of medical evidence that she is physically or mentally, as a consequence of the injury, incapable of any employment; (2) the production of evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but that it would be futile because of preexisting conditions, i.e. age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than that earned prior to the injury, Russell v. Lowes Prod.Distrib., 108 N.C. App. 762,425 S.E.2d 454 (1993). Plaintiff has satisfied the first prong of Russell. *Page 15 
6. As a result of Plaintiff's compensable injury by accident and the chronic pain resulting therefrom, Plaintiff has been disabled since August 22, 2007. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to temporary total disability benefits to be paid at the rate of $134.00 per week from August 22, 2007 and continuing. N.C. Gen. Stat. § 97-29.
8. Plaintiff is entitled to payment for her medical expenses incurred, or to be incurred, as a result of her compensable injuries that are necessary to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-25.1; 97-2(19).
9. As Plaintiff has been established as an employee of Excel Payroll Plus, Inc., Defendant-Carrier, Hartford Insurance Company, shall provide workers' compensation coverage for this claim. N.C. Gen. Stat. § 97-2.
10. Neither party has unreasonably defended this matter and thus neither party shall recover attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant-Carrier, Hartford Insurance Company, shall pay temporary total disability benefits to Plaintiff effective August 22, 2007 and continuing at the rate of $134.00 per week until Plaintiff has returned to suitable employment.
2. Defendant-Carrier, Hartford Insurance Company, shall pay and provide necessary and reasonable medical treatment for Plaintiff's back and mental injuries, including bills already incurred from her injuries so long as such treatment tends to provide relief, effect a cure and lessen Plaintiff's period of disability. *Page 16 
3. Defendant-Carrier, Hartford Insurance Company, shall pay to Plaintiff's attorney a reasonable attorney's fee of twenty-five percent of all accrued benefits owed to Plaintiff as of the date of this Opinion and Award.
4. Defendant-Carrier, Hartford Insurance Company, shall pay directly to Plaintiff's attorney every fourth check as of the date of this Opinion and Award until further order of the Commission.
5. Penalty Hearing 2076 is hereby dismissed with prejudice.
6. Defendant-Carrier, Hartford Insurance Company, shall bear the costs of this proceeding.
7. Defendants shall pay the costs.
This the 21st day of September, 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ BERNADINE BALLANCE COMMISSIONER *Page 1